# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **12-00456-jw**
Adversary Proceeding Number: **15-80147-jw**

## SUPPLEMENTAL ORDER

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**03/16/2016**



_/s/ John E. Waites_
US Bankruptcy Judge
District of South Carolina

Entered: 03/16/2016

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Congaree Triton Acquisitions, LLC,<br><br>Debtor. | C/A No. 12-00456-JW<br><br>Adv. Pro. No. 15-80147-JW<br><br>Chapter 7<br><br>**SUPPLEMENTAL ORDER** |
| Robert F. Anderson,<br><br>Plaintiff,<br><br>v.<br><br>Carroll A. Campbell<br>John D. Cattano,<br><br>Defendants. | |

This matter comes before the Court for consideration of discretionary abstention suggested by the Defendants in their previously filed Motion to Dismiss. The Plaintiff and Defendants, as well as other interested parties in this proceeding, filed memoranda on the issue and a hearing was held.[1] After reviewing the pleadings and the arguments presented at the hearing, the Court makes the following findings of fact and conclusions of law.[2]

**FINDINGS OF FACT**

1. On January 4, 2011 Carroll A. Campbell, III, ("Campbell") and John D. Cattano ("Cattano") (collectively "Campbell and Cattano") organized Congaree Triton

---

[1] In addition to the memoranda submitted by the Plaintiff and Defendants, memoranda was submitted by Triton Stone New Orleans, LLC, Christian Jensen, Jack Jensen, Triton Stone Group, LLC, Triton Stone Southhaven, Randy Mathis, Gary Sena and Joshua L. Kessler ("Affected Settling Parties"). As further discussed below, the Affected Settling Parties previously reached settlements with Plaintiff in a related adversary proceeding and allege that the present adversary proceeding is significantly related to those previously-entered settlements.

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

Acquisitions, LLC ("Debtor") by filing Articles of Organization with the South Carolina Secretary of State. The purpose of Debtor's incorporation was to purchase and operate two natural stone distributing companies, Triton Stone of Charlotte, Inc. ("TSCLT") and Triton Stone of Myrtle Beach, Inc. ("TSMB"). Campbell and Cattano were two of the principal investors in Debtor.

2.      On March 1, 2011, Debtor entered into an Asset Purchase Agreement ("APA") with TSCLT and TSMB to purchase substantially all of the assets of the two companies (the "Purchase Transaction").

3.      Pursuant to the APA, the assets of TSCLT and TSMB were then transferred to Debtor on March 11, 2011.

4.      At the hearing, the Trustee and Affected Settling Parties alleged that, in November of 2011, Debtor, Campbell and Cattano initiated an action as Plaintiffs in the Court of Common Pleas for Horry County (2011-CP-26-9725) against several parties for claims relating to the Purchase Transaction ("First State Court Action").[3]  This First State Court Action was removed to the United States District Court for the District of South Carolina (4:12-cv-01075-MGL) on April 20, 2012.

5.      On January 26, 2012, Debtor filed a voluntary petition for relief under Chapter 11, and continued to operate, for a time, as a debtor in possession.

6.      Debtor filed its schedules and statements on February 23, 2012, which were

---

[3]   Of the defendants in the First State Court Action, the following are collectively referred to as "State Court Defendants": Triton Stone Group, LLC, Triton Stone Management, LLC, Triton Stone Southhaven, LLC, Joshua Kessler, Randy Mathis, Gary Sena, Triston Stone Group New Orleans, LLC, Christian Jensen, Jack Jensen, TSCLT, TSMB, FGSW, LLC, 9002 Dunes, LLC, Natural Stone Holdings, LLC, Federico Gildmeister, and Michella Williams. In addition to the State Court Defendants, Debtor, Campbell and Cattano also brought causes of action in the First State Court Action against several other parties, which are not necessary to list at this time.

2

amended on March 13, 2012.[4] Both Debtor's original and amended Schedule B lists contingent and unliquidated claims against several of the State Court Defendants.[5] The Trustee and Affected Settling Parties allege that these claims were the same as those alleged in the First State Court Action.

7. On June 29, 2012, upon a motion and hearing, Debtor's bankruptcy case was converted to chapter 7 under the Bankruptcy Code and Plaintiff ("Trustee") was appointed as the Chapter 7 Trustee.

8. Upon the consent of Campbell and Cattano, the First State Court Action was dismissed without prejudice as to all plaintiffs on March 1, 2013, in part due to Debtor's bankruptcy case.

9. On March 7, 2014, Campbell and Cattano individually filed a complaint in the Richland County Court of Common Pleas for multiple causes of action against the State Court Defendants, which was assigned a case number of 2014-CP-40-1517 ("Second State Court Action").[6] Notably, neither Debtor nor the Trustee is a party to the Second State Court Action.

10. Subsequently, on July 9, 2014, the State Court Action was transferred to the Horry County Court of Common Pleas ("State Court").[7] The Trustee and Affected Settling

---

[4] Both Debtor's original and amended schedules were signed by Cattano in his capacity as Debtor's Chief Financial Officer.

[5] The claims alleged in Debtor's Schedule B include fraud, negligent misrepresentation, breach of contract, unfair trade practices, indemnification, conversion, unjust enrichment, intentional interference with contractual relations, equitable relief and civil conspiracy.

[6] Campbell and Cattano's amended complaint in the Second State Court Action lists the following claims: fraud, constructive fraud, fraudulent concealment, negligent misrepresentation, unfair trade practices, unjust enrichment, civil conspiracy, breach of fiduciary duty, indemnification, fraudulent inducement to create a limited liability company, malicious prosecution. Subsequently, the State Court dismissed the following claims: breach of fiduciary duty, fraudulent inducement to create a limited liability company and civil conspiracy.

[7] Upon the transfer of the State Court Action to Horry County, the case was assigned as case number 2014-CP-26-04888.

3

Parties allege that the complaint in the Second State Court Action is nearly identical to the complaint brought by Debtor, Campbell and Cattano in the First State Court Action.[8]

11. On March 10, 2014, the Trustee commenced an adversary proceeding (C/A No. 14-80026-jw) by filing a complaint that asserts several causes of action relating to the Purchase Transaction ("Purchase Transaction Adversary") against multiple defendants, including many of the State Court Defendants.[9]

12. On July 9, 2014, the State Court entered an order pursuant to S.C. R. Civ. P. 12 ("State Court's Order") in the Second State Court Action. In an interlocutory order,[10] the State Court held that, in the context of S.C. R. Civ. P. 12, Campbell and Cattano raise colorable individual claims. Campbell and Cattano assert that the State Court's Order supports their position that the remaining claims are not property of Debtor's estate.

13. On September 12, 2014, after notice and a hearing, which included consideration of the objection of Campbell and Cattano, this Court entered an Order Approving Settlement between the Trustee and State Court Defendants Inga R. Ivey, Michella I. Williams and 9002 Dunes, LLC regarding the claims raised in the Purchase Transaction Adversary ("9/12/14 Order"). As part of that settlement, the Trustee released any claims

---

[8] The Trustee and Affected Settling Parties allege that this inclusion of these claims in Debtor's schedules may judicially estop Campbell and Cattano from prosecuting the Second State Court Action. However, the Court does not need to address this argument at this time.

[9] Per the Trustee's Amended Complaint, claims were brought in the Purchase Transaction Adversary against 9002 Dunes, LLC, FGSW, LLC, Triton Partners Management Group d/b/a Triton Stone Management Group of Charlotte, LLC d/b/a Triton Stone Management, LLC d/b/a Triton Stone Group of Charlotte, LLC, Triton Stone Group, LLC, Triton Stone New Orleans, LLC, TSCLT, TSMB, Triton Stone of Southaven, Federico J. Gildemeister, Michella I. Williams, Inga R. Ivey, Joshua L. Kessler, Campbell & Cattano.

[10] The Supreme Court of South Carolina has held that the determination of the direct or derivative nature of claims in the context of S.C. R. Civ. P. 12 is interlocutory and not immediately appealable. See Huntley v. Young, 462 S.E.2d 860, 861 (S.C. 1995) ("Although generally the denial of a Rule 12(b)(6) motion is not directly appealable, we have allowed an appeal in cases such as this where the issue is whether a claim is properly asserted as a direct action or as a shareholder's derivative action. We now reconsider . . . and overrule it to the extent it hold this type of order is directly appealable.")

4

Debtor's estate may have possessed at the time of petition against Inga R. Ivey, Michella I. Williams and 9002 Dunes, LLC.

14. On March 30, 2015, the Trustee sought court approval of a settlement reached between the Trustee and Triton Partners Management Group d/b/a Triton Stone Management Group of Charlotte, LLC d/b/a Triton Stone Management, LLC d/b/a Triton Stone Group of Charlotte, LLC, Triton Stone Group, LLC, Triton Stone of Southhaven, and Joshua L. Kessler ("Application of Settlement"). As part of that settlement, the bankruptcy estate was paid $250,000 in consideration for, among other items, the estate's release of any claims involving the Purchase Transaction, including any derivative claims brought by Debtor's members.[11]

15. In the Application of Settlement, the Trustee stated his position that the claims in the Second State Court Action are derivative. Campbell and Cattano objected to the Application of Settlement, in part, based on their position that the claims are direct. The Court entered an Order Approving Settlement on June 8, 2015 ("6/8/15 Order"). In determining whether to approve the settlement, the Court was not requested nor did it need to conclude whether claims in the Second State Court Action were direct or derivative.

16. The 9/12/14 Order and 6/8/15 Order were not appealed and are final. As such, they are binding on Campbell and Cattano as to the Court's determination of the settlement and its release of Debtor's claims relating to Purchase Transaction, including any derivative claims being asserted in the Second State Court Action.

---

[11] At the hearing on the Application of Settlement, the settlement agreement was not presented into the record as it appeared that the Trustee's Application of Settlement and the expression of key terms provided a sufficient basis to approve the settlement. The Trustee requested the settlement agreement remain confidential as it contained the Trustee's future litigation strategy against Campbell and Cattano as remaining defendants. Subsequent to that hearing, the Court requested an in camera review of the settlement agreement. At a later hearing, Campbell and Cattano expressed an interest in reviewing the settlement agreement; however, they did not make a formal request for the exposure of the agreement. If any party believes that the exposure of the settlement agreement is necessary, that party should file a motion making that request.

17. On July 15, 2015, after Campbell and Cattano continued prosecution of the Second State Court Action, the Trustee filed the present adversary proceeding seeking declaratory judgments and permanent injunctive relief against Campbell and Cattano. The Trustee alleges the Second State Court Action involves derivative claims, which are property of the bankruptcy estate under 11 U.S.C. § 541.[12] The Trustee seeks declaratory judgments that certain claims in the Second State Court Action are property of the estate, that certain claims in the Second State Court Action were settled by the settlement agreements approved by the 9/12/14 Order and 6/8/15 Order and that Campbell and Cattano's prosecution of the Second State Court Action is a violation of § 362(a)(3). Further, the Trustee seeks permanent injunctive relief to prevent any further prosecution of the derivative claims in the Second State Court Action.

18. On August 13, 2015, the Trustee filed an Amended Complaint ("Trustee's Amended Complaint") in the present adversary proceeding.

19. On September 4, 2015, Campbell and Cattano filed a Motion to Dismiss the Trustee's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6); which the Court subsequently denied.

20. As part of the Court's Order on the Motion to Dismiss Trustee's Amended Complaint, the Court requested the Plaintiff, Defendants and other interested parties submit memoranda as to whether the Court should, in its discretion, abstain from hearing this adversary proceeding. Thereafter, a hearing was held on the issue.

21. Throughout the pendency of the Purchase Transaction Adversary and this adversary proceeding and without obtaining relief from the automatic stay, Campbell and

---

[12] Further citations to sections of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.) shall be by section number only.

Cattano have continued their prosecution of the Second State Court Action. At the hearing on this matter, the Trustee and Affected Settling Parties alleged that Campbell and Cattano's continued prosecution affects the administration of the estate because the claims in that action are derivative and the Trustee, who is not a party to the action, is the proper party to prosecute any such claims. Further the Affecting Settling Parties allege that the continued prosecution of the Second State Court Action causes them to be exposed to additional costs to defend what they allege are derivative claims that have been previously settled and released by the Trustee. The Affected Settling Parties have advised the Court that Campbell and Cattano's continued prosecution of the action may require them to seek revocation of the settlement, including the $250,000 payment made to the estate.

22. Also at that hearing, counsel for Campbell and Cattano stated that the Second State Court Action is listed on the jury trial roster for Horry County to be called on March 14, 2016 and that, other than receiving discovery responses overdue from the State Court Defendants, the matter was ready for trial in the near future. The Affected Settling Parties disagreed and argued that the state court discovery is not complete and, in fact, not yet initiated by several defendants. Therefore, the Affected Settling Parties do not believe the matter is ready for trial in the near future. Further, the parties reported that the Second State Court Action is currently stayed pending an appeal of a discovery issue to the Court of Appeals for South Carolina.

23. In addition, Campbell and Cattano, through counsel, indicated that they presently possess significant evidence, including hundreds of emails and other documents, which demonstrate that their injuries alleged in the Second State Court Action are personal in nature and, therefore, distinguished from any derivative actions released in the Trustee's

7

settlements.

# CONCLUSION OF LAW

*Discretionary Abstention*

The Defendants suggest that this Court abstain from hearing the present matter under 28 U.S.C. § 1334(c)(1). This section states that:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State Law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Generally, federal courts should narrowly construe the doctrine of discretionary abstention when adjudicating controversies entrusted to the jurisdiction of a federal court. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). In considering discretionary abstention, the South Carolina Bankruptcy Court has specifically adopted the factors proposed in In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr.S.D.Tex.1987):

1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
2. The extent to which state law issues predominate over bankruptcy issues;
3. The difficulty or unsettled nature of the applicable state law;
4. The presence of a related proceeding commenced in state court or other nonbankruptcy court;
5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. The substance rather than form of an asserted "core" proceeding;
8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. The burden of the bankruptcy court's docket;
10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. The existence of a right to a jury trial; and
12. The presence in the proceeding of nondebtor parties.

8

See <u>Dunes Hotel Assocs. V. Hyatt Corp. (In re Dunes Hotel Associates)</u>, C/A No. 94–75715–W, Adv. Pro. No. 95–8223-W, 1996 WL 33340785 at *6–8 (Bankr. D.S.C. July 11, 1996) (applying the <u>Republic Reader's</u> factors to determine if the court should permissively abstain).

The party seeking the Court to abstain has the burden of proof. See <u>Hough v. Margulies (In re Margulies)</u>, 476 B.R. 393, 402 (Bankr. S.D.N.Y. 2012) ("The movant bears the burden of establishing that permissive abstention is warranted."); <u>York v. Bank of America, N.A. (In re York)</u>, 291 B.R. 806, 816 (Bankr. E.D. Tenn. 2003) ("The party requesting abstention has the burden of proof.").

In reviewing the Trustee's Amended Complaint and arguments of counsel, several of the <u>Republic Reader's</u> factors are significant to the Court's determination of whether it should abstain in this matter. First, the present adversary proceeding is significantly related to Debtor's main bankruptcy case and implicates important core matters. The key issue in the present adversary proceeding is whether the claims in the Second State Court Action are property of the bankruptcy estate. The bankruptcy court has core and exclusive jurisdiction to determine what is property of the estate under § 541. See 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of property of the estate"); <u>In re Touch America Holdings, Inc.</u>, 401 B.R. 107, 117 (Bankr. D. Del. 2009) ("Various courts have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings."); <u>All American Laundry v. Ascher (In re Ascher)</u>, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) ("[A] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive

jurisdiction."). While the determination of the parties' property rights is based in state law,[13] the Court is routinely asked to determine parties' rights under state law. See, e.g. In re Infinity Business Group, Inc., C/A No. 10-06335-jw, slip op. (Bankr. D.S.C. June 22, 2011) (determining if claims brought in state court litigation were property of the debtor's estate); In re Glo-Tex Int'l, Inc., C/A No. 07-06449-JW, slip op. (Bankr. D.S.C. Nov. 30, 2010) (same); In re Greenwood Supply, Co., 295 B.R. 787 (Bankr. D.S.C. 2002) (same). Further, the present adversary proceeding also involves issues related the application of the automatic stay under § 362.

Second, there is a serious question as to whether the Trustee can properly administer the estate if the Court abstains. The Affected Settling Parties have suggested that if the Court abstains and Campbell and Cattano are allowed to continue prosecution of the Second State Court Action, the Affected Settling Parties will have no alternative but to seek revocation of the previously approved settlement, including recovery of the $250,000 of settlement proceeds paid to the estate. The loss of these settlement proceeds would have a significant detrimental effect on the estate as they constitute a majority of the estate's present assets. Further, if the settlement was revoked, the Trustee would face the possibility of lengthy and costly litigation with the Affected Settling Parties as the claims against those parties in the Purchase Transaction Adversary would no longer be settled.

Third, by virtue of the Trustee's declaratory judgment proceeding, this Court has before it all of the necessary parties to expeditiously determine whether the claims in the Second State Court Action are derivative or direct. Also, without an initial determination of this issue by this Court, there is a significant possibility that Campbell and Cattano's efforts

---

[13] See Butner v. Unites States, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.")

10

in the State Court could violate the automatic stay, which would result in those efforts being void *ab initio* and outside the State Court's jurisdiction.[14] See Weatherford v. TIMMARK (In re Weatherford), 413 B.R. 273, 283–84 (Bankr. D.S.C. 2009) (holding that a judgment obtained in violation of the automatic stay is void *ab initio* and without legal effect); Ex parte Reichlyn, 427 S.E.2d 661, 663–64 (S.C. 1993) (holding that the automatic stay deprives state court judges "of subject matter jurisdiction to take any action inconsistent with the stay."). Further, in light of the statements by counsel for Campbell and Cattano that they are presently in possession of hundreds of emails and documents demonstrating the personal nature of their injuries; there appears to be considerable evidence ready and available to adjudicate this matter.

Finally, the Court's docket is not overly burdened by this action. Unlike the State Court, the scope of the issue before this Court is limited and focused—determining whether the claims in the Second State Court Action are direct or derivative as a matter of law.[15] Further, while the Trustee and the bankruptcy estate may be acutely affected by the Second State Court Action, the Trustee is not a party to that action and it is unclear if he would be able to intervene in that court. Because it appears that the necessary parties are before this Court and that all the parties are ready to proceed, this Court can handle the proceeding in an efficient and timely manner. For these reasons, the Court declines to abstain in this proceeding. While this Court is mindful of the interest of comity with the state courts, based on the Republic Reader's factors, this Court should hear and determine the present matter.

---

[14] The Court notes that Campbell and Cattano did not previously seek or obtain relief from the automatic stay prior to proceeding with the Second State Court Action.

[15] Also factoring into this consideration is that it is unclear when the State Court will reach a conclusive determination of whether the claims are direct or derivative as the parties have reported that the Second State Court Action is stayed pending an appeal and have provided conflicting reports as to how soon the matter could go to trial in State Court.

*Stay of the Second State Court Action*

As noted in the Order on the Motion to Dismiss Trustee's Amended Complaint, it appears that both this Court and the State Court are overseeing parallel actions in which both courts must determine whether the claims in the Second State Court Action belong to Debtor's estate or Campbell and Cattano individually.

The Affected Settling Parties assert that the allegations in the First State Court Action and Second State Court Action are nearly identical, except for the inclusion of Debtor as a plaintiff in the Second State Court Action. Upon the filing of the bankruptcy case, rather than dismiss the First State Court Action only as to Debtor, the action was voluntarily dismissed by Campbell and Cattano as plaintiffs as well. That action, along with the listing of the same causes of action in Debtor's schedules, give credibility to the argument that the claims are derivative in nature. With that in mind, such an examination is best to be made by this Court.

Further, when a bankruptcy trustee and another party have competing lawsuits, the party involved should seek relief from the automatic stay prior to commencing or resuming that litigation.[16] An initial determination by the bankruptcy court regarding the automatic stay is critical to ensure the validity of any non-bankruptcy court proceedings occurring during the pendency of a bankruptcy case.

In the current matter, Campbell and Cattano did not seek relief prior to commencing the Second State Court Action. Before the Court can conclusively determine whether Campbell and Cattano may proceed in State Court, further proceedings are needed to

---

[16] See Infinity., C/A No. 10-06335-jw, slip op. at 3–12 (addressing a motion for relief filed by plaintiffs in a state court lawsuit to resume state court litigation against non-debtor third parties who were associated with the debtor); Glo-Tex, C/A No. 07-06449-JW, slip op. at 4–11 (addressing a petition for relief filed by plaintiffs in state court lawsuit to resume that litigation against former shareholders and officers of the debtor).

determine whether the claims in that action are property of the bankruptcy estate.[17] The Affected Settling Parties have expressed concerns that Campbell and Cattano's prosecution in State Court could be an attempt to circumvent the bankruptcy process, especially in light of the fact that a key issue in that litigation is whether the claims are property of Debtor's estate, that the Trustee is not a party to that action, and that Campbell and Cattano did not seek relief from this Court prior to proceeding in State Court.[18] Finally, it is clear that dual competing proceedings creates unnecessary expense to all parties and is a waste of judicial resources. Therefore, for these reasons, based in both policy and law, it appears that this Court should presently determine the issues related to its prior orders, the automatic stay and the bankruptcy estate; and therefore, the continuation of the Second State Court Action should be

---

[17]   In regards to property in which the debtor, at the time of the bankruptcy filing, has an arguable claim of right to, courts have held that the automatic stay applies. See Brown v. Chestnut (In re Chestnut), 422 F.3d 298, 300–03 (5th Cir. 2005) (introducing the concept of *arguable property* and holding that, under the facts presented, the automatic stay is applicable to the disputed property); Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.), 432 B.R. 583 (Bankr. S.D. Tex. 2010) ("When property is determined to be 'arguable property' of the estate, it should be presumed to be property of the estate."); In re Levenstein, 371 B.R. 45 (Bankr. S.D.N.Y. 2007) ("It is for the Bankruptcy Court, not the secured creditor, to determine whether the debtor has a sufficient interest in property to implicate the automatic stay, *even if the debtor's claimed interest in property may turn out to be groundless*." (emphasis added)); but see In re Fadel, 492 B.R. 1 (9th Cir. B.A.P. 2013) (declining to adopt the holding in Chestnut). Further, at least one court has found that the automatic stay applies to certain property when there is a *bona fide* dispute as to the parties' rights in that property. See In re Pickel, 487 B.R. 289, 295 (Bankr. D.N.M. 2013) (declining to outright adopt the Fifth Circuit's holding in Chestnut but holding that the automatic stay applied to certain property when "the debtor demonstrated a *bona fide* dispute with a creditor regarding whether property is property of the estate").

[18]   These concerns were also reflected in the Fourth Circuit's holding in National Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439 (4th Cir. 1999), In Ruppert, the Fourth Circuit held that a creditor lacked standing to bring claims in the district court where're the creditor's claims shared the same underlying focus and were similar in object and purpose to the claims that the trustee could bring in the bankruptcy court. Id. at 440–41. In reaching this holding, the Court reasoned:

> To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate. The goal of bankruptcy is to consolidate the proceedings and avoid piecemeal litigation . . . .
>
> Reserving the action for the trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process.

Id. at 442 (quoting American Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1274 (5th Cir. 1983)).

considered stayed by the automatic stay.[19]

## CONCLUSION

Based on the foregoing reasons, this Court will not abstain from hearing the present adversary proceeding. Further, the Court finds the Second State Court Action, better known in the South Carolina state courts as Civil Action No. 2014-CP-26-04888 and Appellate Case No. 2016-000233, is stayed until a further Order of this Court makes a determination regarding whether the claims in that action are property of Debtor's estate.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
March 16, 2016

---

[19] It also appears that the Second State Court Action should be further stayed under § 105 of the Bankruptcy Code. Section 105 provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. The Trustee has alleged, and it appears that the Second State Court Action may affect (1) property of the estate under § 541, (2) the Court's previously entered orders approving the Trustee's settlements and (3) the automatic stay under § 362. A stay of the proceedings in State Court is necessary in order for this Court to appropriately carry out the provisions of the Code in an efficient and orderly fashion and to maintain the integrity of the bankruptcy estate. See A.H. Robins Co., Inc. v. Piccinin (In re A,H. Robins Co., Inc.), 788 F.2d 994, 1003 (4th Cir. 1986) ("'In the exercise of its authority under § 105, the Bankruptcy Court may use its injunctive authority to protect the integrity of a bankrupt's estate and the Bankruptcy Court's custody thereof and to preserve to that Court the ability to exercise the authority delegated to it by Congress.'" (quoting Johns-Manville Corp. v. The Asbestos Litigation Group (In re Johns-Manville Corp.), 40 B.R. 219, 226 (S.D.N.Y 1984))); In re Derivium Capital, LLC, 380 B.R. 392, 403 n. 8 (Bankr. D.S.C. Oct. 26, 2007) ("The Court has equitable powers under 11 U.S.C. § 105 to stay creditors' litigation of those claims while the bankruptcy case is pending, which would effectively prevent creditors from 'undermining the ordered distribution of the bankruptcy estate.'").

14